```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/25/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PETER P. MISLUK, JR.,

                              Plaintiff,

            -against-

LEE ZELDIN, *Administrator, Environmental
Protection Agency*,[1]

                              Defendant.

23-cv-10976 (MKV)

OPINION AND ORDER
GRANTING IN PART
AND DENYING IN PART
MOTION TO DISMISS

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Peter P. Misluk, Jr., proceeding *pro se*, asserts claims for age discrimination and

retaliation against Defendant Lee Zeldin in his official capacity as the Administrator of the

Environmental Protection Agency. *See supra* at n.1. Defendant moves to dismiss. For the reasons

set forth below, the motion is GRANTED in part and DENIED in part.

## I.      BACKGROUND

### A.  Facts[2]

Plaintiff Peter P. Misluk, Jr. was employed during the relevant period by the Environmental

Protection Agency ("EPA") in a New York office [ECF No. 1 ("Compl") at 3]. Plaintiff is "still

employed at EPA" [ECF No. 20 ("Sept. Ltr.") at 2].

---

[1] Plaintiff names former EPA Administrator Michael Regan as the defendant in this action; however, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Lee Zeldin is automatically substituted for Michael Regan as the defendant in this action.

[2] On a motion to dismiss, a court must accept a plaintiff's factual allegations as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Xeriant, Inc. v. Auctus Fund LLC*, 141 F.4th 405, 411 (2d Cir. 2025). Here, the facts are drawn from Plaintiff's "pleadings and briefs," which are liberally construed because Plaintiff is *pro se* [ECF Nos. 1 ("Compl."), 20 ("Sept. Ltr."), 20-1–20-2 ("Voo Tr."), 34 ("Pl. Opp.")]. *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017); *see Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 229 (S.D.N.Y. 2013) ("[T]he mandate to liberally construe *pro se* pleadings makes it appropriate to consider the facts set forth in plaintiff's opposition papers."); *Locicero v. O'Connell*, 419 F. Supp. 2d 521, 525 (S.D.N.Y. 2006) ("In the case of a motion to dismiss involving a claim by a *pro se* plaintiff, a court may look beyond the complaint to the plaintiff's opposition papers."); *Acheampong v. United States*, 2000 WL 1262908, at *4 (S.D.N.Y. Sept. 5, 2000).

Specifically, in or about 2014, Plaintiff was employed at the "GS-12" level in a program involving "Underground Storage Tank" ("UST") issues.  Compl. at 9, 10; Sept. Ltr. at 3; *see* Voo Tr. at 34:8–9.  In or about that time, Plaintiff filed a complaint with the "Regional Administrator" of the EPA against his direct supervisor, Dennis McChesney, alleging that McChesney had subjected him to "harassment, bullying, and physical intimidation."  Compl. at 9.  Plaintiff "simultaneously resigned."  *Id.*

Thereafter, Plaintiff wrote to the Regional Administrator about rescinding his resignation. *Id.*  The Regional Administrator "forwarded his complaint" to "[Division] Director Dore LaPosta" and instructed LaPosta "to find a way for [him] to return to work."  *Id.*  Plaintiff alleges that he was "surprised" that the Regional Administrator had "assigned this" to LaPosta because Plaintiff had "cited" LaPosta in his complaint as "the enabler" of McChesney's alleged "serial abuse[] of EPA employees."  *Id.*; *see* Sept. Ltr. at 1.

Plaintiff alleges that he and LaPosta "negotiated terms" for Plaintiff to return to work in September 2014.  Compl. at 9.  In particular, Plaintiff alleges, he "would no longer be supervised by Mr. McChesney" and, instead, would report to McChesney's supervisor, Leonard Voo.  *Id.*  "The internal Human Resources investigation would take six to eight weeks at which time [Plaintiff] would be permanently placed in another program."  *Id.* at 10.  While the investigation was ongoing, Plaintiff "would continue to perform work assigned to [him] by Mr. Voo from the UST Program [Plaintiff] had been working in."  *Id.*

Plaintiff alleges that, when he returned to work, these terms were not met.  In particular, Plaintiff alleges, "McChesney interfered in all the UST related work that Mr. Voo assigned" to Plaintiff and "usurped" Plaintiff's "responsibilities."  *Id.*  As a result, Plaintiff alleges, "he worked on training and whatever small projects Mr. Voo could find for [him] that were not related to the

Underground Storage Program." *Id.*

Plaintiff alleges that "Mr. Falconeri," a "Human Resources Labor Relations Specialist" who investigated Plaintiff's complaint, informed Plaintiff that he "expected to conclude [the] investigation and issue a final report" by January 2015. *Id.* However, Plaintiff alleges, he "heard absolutely nothing" until July 10, 2015. *Id.*

Plaintiff alleges that, on July 10, 2015, "Voo scheduled a late afternoon meeting with" him. *Id.* Plaintiff alleges that, at that meeting, "Voo asked, 'Have you heard anything about the status of the investigation?'" *Id.* at 11. According to Plaintiff, Voo proceeded to ask him a series of questions about the possibility of Plaintiff retiring. *See id.* Specifically, Voo asked Plaintiff, "How much federal service time to do you have?" *Id.* After Plaintiff responded ("About 8 years"), Voo asked, "Have you thought about retirement?" *Id.* Plaintiff alleges that Voo asserted "You might like it." *Id.* When Plaintiff "stated that [he] was not certain that [he] was even vested in the system," Voo allegedly "advised [Plaintiff] that [he] was indeed vested in the system." *Id.* According to Plaintiff, Voo persisted: "When do you plan to retire?" *Id.*

Plaintiff alleges that he "was surprised" when Voo raised the subject of retirement. Sept. Ltr. at 2. Plaintiff "was only 62, healthy, and . . . liked [his] work." *Id.* Plaintiff alleges that he told Voo he "planned to work until [he] was 70." Compl. at 11.

Plaintiff alleges that, at that point, Voo "stated that he had a message for [Plaintiff] from Dore [LaPosta]." *Id.* According to Plaintiff, Voo "informed [Plaintiff] that Dore [LaPosta] had instructed [Voo] that the investigation was taking too long, and therefore she was redirecting [Plaintiff] to return to work for Dennis McChesney." *Id.* Plaintiff "was shocked, and replied, 'Lenny, that is not happening.'" *Id.* Plaintiff alleges that "Voo then stated that 'Dore [LaPosta] has made the decision'" and Voo "was giving [Plaintiff] enough work for the following week"

only. *Id.* Plaintiff contends that Voo gave him an "ultimatum": "report back to [his] abusive supervisor or retire." Compl. at 5; *see* Sept. Ltr. at 2, 3; Pl. Opp. at 1. Plaintiff further alleges that, after the meeting, Voo gave him a copy of the Federal Retirement Manual, which made Plaintiff feel that he "was being pushed to retire." Sept. Ltr. at 2 & n.2; *see* Compl. at 11.

Plaintiff alleges that his "age" was used "as a weapon" to "quash" his complaint against McChesney. Compl. at 12; *see id.*; Sept. Ltr. at 4 (alleging that "during the July 10, 2015[] meeting in Mr. Voo's office" his "age" was "weaponized against [him] in an attempt to sweep the complaint" against McChesney "[not merely] under the rug, but totally away"); Pl. Opp. at 1. Plaintiff alleges that, shortly after his meeting with Voo, he retained an attorney because he "felt [he] had been the victim of retaliatory harassment" and that the "EPA was using its failure to respond to [his] complaint [against McChesney] to put pressure on [Plaintiff] to retire." Compl. at 12. Thereafter, Plaintiff alleges, he learned that LaPosta had "contrived a plan" to "end [Plaintiff's] complaint against Mr. McChesney." Pl. Opp. at 1; *see* Compl. at 12.

Plaintiff specifically alleges that Voo issued the ultimatum "under what turned out to be a false pretense." Sept. Ltr. at 3. According to Plaintiff, LaPosta arranged for Voo to falsely inform Plaintiff that "the investigation had not been completed yet," and "McChesney's Underground Storage Tank program was short staff[ed]," so Plaintiff "had two choices, report back to Mr. McChesney the following week or retire," even though, in reality, the investigation had been completed months earlier. Pl. Opp. at 1. In particular, Plaintiff alleges that, later in July 2015, Mr. Falconeri, who had investigated Plaintiff's complaint against McChesney, informed Plaintiff that he had "finished the investigation" and given LaPosta the "final report orally in January." Compl. at 12; *see also* Sept. Ltr. at 3 (alleging that LaPosta "requested that the Investigation Report . . . be delivered only orally"). Plaintiff contends that LaPosta "contrived [this] plan" so that "she could

4

end [Plaintiff's] complaint against Mr. McChesney without anyone knowing that he had been found to have committed Reprimandable Acts." Pl. Opp. at 1; *see also* Compl. at 12; Sept. Ltr. at 4 (alleging that "LaPosta had no intention of letting the investigator's findings ever be known by anyone, other than herself").

Plaintiff filed an EEOC complaint in or about late July or August 2015. *See* Pl. Opp. at 1; Sept. Ltr. at 3; Compl. at 12, 14. Plaintiff expressly represents that he has "never claimed that the initial abuse [he] experienced under Mr. McChesney was age-related." Sept. Ltr. at 3. Rather, Plaintiff alleges, that "complaint started as a whistleblower complaint." Compl. at 13. Thereafter, Plaintiff alleges, "the EPA weaponized [his] age, and used it against [him], trying to drive [him] out of the EPA, and thereby effectively kill [his] whistleblower complaint." Compl. at 13; *see* Sept. Ltr. at 3 (alleging that "[t]his became an EEOC violation when Ms. LaPosta had Mr. Voo call me into his office and inquire about my eligibility to retire, before issuing me an ultimatum, under what turned out to be a false pretense.").

Plaintiff further alleges that he "never claimed that EPA retaliated against [him] after [he] filed the EEOC complaint." Sept. Ltr. at 3. Rather, according to Plaintiff, he "felt [he] had been the victim of retaliatory harassment" in connection with his earlier (non-age-related) complaint against McChesney. Compl. at 12.

Plaintiff asserts that he "didn't claim that age discrimination prevented [him] from being promoted." Sept. Ltr. at 3. However, Plaintiff does allege that his "filing the EEOC complaint resulted in [his] being in a limbo status for about five years, before Mr. Voo offered [him] a position in another program that he supervises, performing whatever odd projects Mr. Voo could find for [him]." *Id.* Plaintiff alleges that this circumstance "in turn denied [him] a career path to being promoted from GS-12 to GS-13. *Id.*

### B. Procedural History

Plaintiff is proceeding *pro se*. He initiated this case by filing a complaint, which the Court has allowed him to supplement by letter, as explained below [ECF Nos. 1 ("Complaint" or "Compl."), 20 ("September Letter" or "Sept. Ltr.")].

Plaintiff initially filed the Complaint on December 11, 2023, in order "[t]o meet the deadline for filing within 90 days" of his receiving a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC"). Compl. at 8; *see id.* at 6 (representing that he received the "Notice of Right to Sue" on September 14, 2023). Thereafter, however, on December 15, 2023, Plaintiff learned that his "submission had been rejected" because of a "technical error." *Id.* at 8. As such, on December 15, 2023, he refiled the Complaint, together with a letter explaining his earlier effort to file on December 11, 2023. *See id.*

The Court issued an Order of Service [ECF No. 3]. The Court simultaneously issued an Order referring the parties to mediation [ECF No. 4], although it does not appear that the parties have yet engaged in mediation. Shortly thereafter, the Clerk of Court issued an Information Packet, which contains instructions for filing an amended complaint, among other information for *pro se* litigants [ECF No. 6 ("*Pro Se* Information Packet")].

After receiving an extension of time to respond to the Complaint, Defendant filed a pre-motion letter requesting leave to file a motion to dismiss [ECF Nos. 9, 10, 12]. In response, the Court issued an Order dated July 19, 2024 [ECF No. 14 ("July 2024 Order")]. The Court granted Defendant leave to file a motion to dismiss and *sua sponte* granted Plaintiff leave to file an amended complaint before Defendant filed any motion to dismiss. *See* July 2024 Order at 1. The Court noted that "[b]ecause Plaintiff is *pro se*, under the Court's Individual Rules, he [was] not required to respond to the pre-motion letter." July 2024 Order at 1. The Court set a deadline of

August 16, 2024 for Plaintiff to "file an amended complaint" and warned that it would be "**Plaintiff's last opportunity to amend in response to any issue raised in the pre-motion letter**." *Id.* (emphasis in original); *see id.* ("**Failure to file an amended complaint by August 16, 2024 will be deemed a waiver of the opportunity to do so**.") (emphasis in original). The Court also set a deadline for Plaintiff to file an opposition to the motion to dismiss. *Id.*

Defendant thereafter requested an extension of time to file its contemplated motion to dismiss, which the Court granted [ECF Nos. 15, 16]. Defendant then requested a second extension of time to file its motion [ECF No. 17]. While that second request was pending, Defendant filed a letter advising the Court that Plaintiff had informed Defendant that he wished to amend his complaint after the deadline to do so had passed [ECF No. 18].

The Court issued an Order, dated September 6, 2024, granting the parties more time to file their respective contemplated submissions [ECF No. 19 ("September 2024 Order")]. The Court wrote: "Because Plaintiff is *pro se*, the Court will give him one more opportunity to amend his complaint and, therefore, the Court will also extend the deadline for the government to file its motion to dismiss." September 2024 Order. The Court set a "new deadline" for Plaintiff to file an amended complaint and again warned that it would be Plaintiff's "**last chance**" and that failure to file an amended complaint by the new deadline would be "**deemed a waiver**" of the opportunity "to cure any issue raised in the pre-motion letter." *Id.*

Plaintiff thereafter filed a letter, dated September 6, 2024, attaching several exhibits [ECF Nos. 20 ("September Letter" or "Sept. Ltr."), 20-1, 20-2, 20-3]. The letter was styled as a response to Defendant's pre-motion letter. *See* Supp. Compl. at 1 ("Re: The Government's Pre-Motion To Dismiss Letter of July 15, 2024"). In that letter, Plaintiff stated that he "wish[ed] to amend the complaint" to reflect certain allegations. Supp. Compl at 1. However, Plaintiff did not file an

amended complaint in accordance with the Local Rules and the instructions in the Information Packet. *See* Local Rule 15.1; *Pro Se* Information Packet at 2.

Defendant subsequently filed a motion to dismiss [ECF Nos. 21, 22, 23]. Thereafter, it filed a letter requesting leave to file a corrected version of its memorandum of law in support of its motion to dismiss, which the Court granted [ECF Nos. 25, 26, 29 ("Def. Mem.")].

Plaintiff did not file an opposition, or any other submission, by the court-ordered deadline. As such, the Court issued an Order To Show Cause why the case should not be dismissed for failure to prosecute [ECF No. 30 ("First OTSC")]. In reciting the procedural history of the case, the Court commented that Plaintiff "ha[d] not filed an amended complaint." First OTSC at 1. The Court proceed to warn Plaintiff that failure to comply with court orders and prosecute his case might result in dismissal. *See id*.

In response to the First OTSC, Plaintiff filed a letter, dated April 17, 2025, explaining that he had made a "substantial submission on September 6, 2024" and making clear that he wished to oppose the motion to dismiss and to prosecute this case [ECF No. 31]. As such, in response to that letter, the Court issued an Order stating that, "[a]lthough Plaintiff did not follow the proper procedure for amending his complaint, to accommodate Plaintiff's *pro se* status, the Court will consider the filings at both ECF number 1 and ECF number 20" together to constitute his operative pleading, the Amended Complaint [ECF No. 32]. The Court also set a deadline for Plaintiff to file an opposition to Defendant's "memorandum of law at ECF number 29" [ECF No. 32].

Plaintiff did not meet that deadline, and the Court issued a Second Order To Show Cause why the case should not be dismissed for failure to prosecute and comply with court orders [ECF No. 33 ("Second OTSC")]. Thereafter, on July 7, 2025, Plaintiff filed a lengthy letter in opposition to Defendant's motion to dismiss [ECF No. 34 ("Pl. Opp.")].

After requesting and receiving yet another an extension of time, Defendant filed a reply brief in further support of its motion [ECF No. 37].

## II.    <u>LEGAL STANDARD</u>

To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The allegations must raise "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[T]he submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).

## III.    <u>ANALYSIS</u>

The Court liberally construes Plaintiff's submissions, including the Complaint and the September Letter, to assert federal and state law claims for age discrimination and retaliation. In particular, Plaintiff asserts claims for: (1) age discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 ("ADEA"), Compl. at 4; (2) retaliation under the ADEA, Compl. at 5; *see* Sept. Ltr. at 2; Pl. Opp. at 5–6; (3) hostile work environment under the ADEA, Compl. at 5; *see* Pl. Opp. at 1; (4) employment discrimination under the New York State Human Rights Law, N.Y. Exec. Law §§ 290–297 ("NYSHRL"), Compl. at 4; and (5) employment discrimination under the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101–131 ("NYCHRL"), Compl. at 4.

Defendant seeks dismissal of all Plaintiff's claims. Defendant contends that "Plaintiff's Complaint is untimely on its face." Def. Mem. at 2, 21. Defendant also contends that the Court "lacks subject matter jurisdiction over the NYSHRL and NYCHRL claims." *Id*. at 1, 9–10.

Defendant argues that Plaintiff fails to state a claim under the ADEA. *Id*. at 1–2, 10–19. It also argues failure to exhaust administrative remedies. *Id*. at 2, 19–20.

As explained below, Plaintiff's claim is not time-barred. Although Defendant imprecisely refers to the statutory limitations of the NYSHRL and NYCHRL as jurisdictional, Defendant is correct that those claims are not available to Plaintiff. Moreover, the Court must dismiss Plaintiff's claim for discrimination under the ADEA. Plaintiff expressly alleges that the EPA merely used his age as a "pretense" to "quash" his non-age-related complaint against McChesney. Sept. Ltr. at 3; Compl. at 12. Thus, Plaintiff does not allege that that EPA discriminated against him "*because of*" his age, and the ADEA does not authorize a mixed-motives discrimination claim. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175, 176 (2009) (emphasis in original) (quoting 29 U.S.C. § 623(a)(1)). However, in light of the Second Circuit's mandate to liberally construe all of the *pro se* Plaintiff's submissions to state any actionable claim they suggest, the Court concludes that Plaintiff adequately alleges a retaliation claim.

**A. Plaintiff's Complaint Is Not Time-Barred.**

Defendant contends that "Plaintiff's complaint is untimely on its face" because he filed the Complaint on December 15, 2023, "*i.e.*, 92 days after receiving [his right-to-sue] letter." Def. Mem. at 21. The Court rejects that contention.

In order to be timely, a "civil action" under the ADEA must be filed within 90 days of the claimant's receipt of a right-to-sue letter. 29 U.S.C. § 626(e); *Francis v. Elmsford Sch. Dist.*, 442 F.3d 123, 126 (2d Cir. 2006). "The filing deadline," however, "is not jurisdictional and, like a statute of limitations, is subject to equitable tolling." *Zerilli-Edelglass v. New York City Transit Authority*, 333 F.3d 74, 80 (2d Cir. 2003), *as amended* (July 29, 2003). The Second Circuit has explained that tolling is "appropriate 'where the plaintiff actively pursued judicial remedies but

filed a defective pleading during the specified time period.'"  *Id.* (quoting *Brown v. Parkchester S. Condos.*, 287 F.3d 58, 60 (2d Cir. 2002)); *accord Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990) (collecting cases).

Here, Plaintiff has explained that he initially filed the Complaint before the 90-day filing deadline on December 11, 2023.  Compl. at 8.  When he learned, on December 15, 2023, that his "submission had been rejected" because of a "technical error," Plaintiff refiled the Complaint the same day.  *Id.*  In this circumstance, it is appropriate to toll the deadline by two days.  *Zerilli-Edelglass*, 333 F.3d at 80.

Defendant effectively admits that tolling is appropriate.  In a footnote, it states: "If Plaintiff demonstrates that he filed his complaint before the deadline and that it was rejected due to the technical issue he describes, then it likely should be considered timely filed."  Def. Mem. at 21 n.8.  As Defendant admits, Plaintiff attached as an exhibit to his September Letter an email from the "Pro Se Intake Unit," dated December 11, 2023, confirming receipt of a submission by Plaintiff [ECF No. 20-3].  Def. Mem. at 21.

Defendant tendentiously contends that this exhibit is insufficient because, while it shows that Plaintiff made a submission on December 11, 2023, it does not conclusively prove that the submission was a complaint.  *See id.*  Defendant cites no authority for the high standard of proof it demands.  In light of the evidence of Plaintiff's December 11, 2023 submission and the filing of the Complaint on December 15, 2023, the record reflects that Plaintiff acted with reasonable diligence during the two-day period he seeks to have tolled.  *See Zerilli-Edelglass*, 333 F.3d at 80.  Plaintiff's case is not time-barred.

**B.  Plaintiff Fails To State Claims under the NYSHRL and NYCHRL.**

Plaintiff asserts claims for employment discrimination under the NYSHRL and NYCHRL.

Compl. at 4.  Defendant asserts that the Court should dismiss those claims for lack of subject matter jurisdiction.  Def. Mem. at 9–10.

The Second Circuit has admonished district courts to be "especially careful to distinguish" between dismissal for failure to state a claim and dismissal for lack of subject matter jurisdiction. *Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1076 (2d Cir. 2021).  Specifically, a court must not treat "a statutory limitation on coverage as jurisdictional" in nature.  *Id.* (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006)).  Here, the Court clearly has supplemental jurisdiction over state law employment discrimination claims based on the same operative facts as Plaintiff's federal employment discrimination claims.  *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011); 28 U.S.C. § 1367.

It is equally clear, however, that the Court must dismiss Plaintiff's state law claims.  It is well established that "the ADEA provides the exclusive remedy for federal employees who allege age discrimination." *Bumpus v. Runyon*, No. 93-cv-3264 (LAP), 1997 WL 539924, at *3 (S.D.N.Y. Aug. 28, 1997).  *See Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976) (holding that Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment"); *Rivera v. Heyman*, 157 F.3d 101, 105 (2d Cir. 1998) (holding that "state law discrimination claims" were properly dismissed in action by federal employee and citing *Brown*); *Correa v. U.S. Gen. Servs. Admin.*, No. 25-cv-6347 (KMW), 2025 WL 2532727, at *3 (S.D.N.Y. Sept. 2, 2025) ("Plaintiff cannot bring state law claims for employment discrimination under the New York City or New York State Human Rights Laws because Title VII and the ADEA provide the exclusive remedies for claims of employment discrimination by federal employees."); *Williams v. Soc. Sec. Admin.*, No. 23-cv-2348 (LTS), 2023 WL 3728375, at *5 (S.D.N.Y. May 30, 2023); *McManamon v. Shinseki*, No. 11-cv-7610 (PAE), 2013 WL 3466863, at *2 (S.D.N.Y. July 10, 2013) (the

NYSHRL and NYCHRL "do not provide relief for . . . age discrimination in an action brought by a federal employee against a federal agency"). Accordingly, Plaintiff's claims under the NYSHRL and NYCHRL are dismissed.

**C. Plaintiff Fails To State a Claim for Discrimination under the ADEA.**

The ADEA makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's age." 29 U.S.C. § 623(a)(1) (emphasis added). To establish a *prima facie* claim of age discrimination, a plaintiff must show that (1) he was within the protected age group, (2) he was qualified for the position, (3) he experienced adverse employment action, and (4) such action occurred under circumstances giving rise to an inference of discrimination based on his age. *Green v. Town of E. Haven*, 952 F.3d 394, 403 (2d Cir. 2020). At the pleading stage, Plaintiff must simply allege facts to support an inference that the EPA took an adverse action against him and his "age was the 'but-for' cause of the employer's adverse action." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85, 86 (2d Cir. 2015) (quoting *Gross*, 557 U.S. at 177).

In its opening brief, Defendant argues that Plaintiff fails to allege an adverse employment action. Def. Mem. at 11–12. However, Defendant filed its brief before the Supreme Court decided *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346 (2024), which "overruled" Second Circuit precedent and established a lower standard for an adverse action in the context of a Tile VII employment discrimination claim. *Back v. Hapoalim*, 2024 WL 4746263, at *2 (2d Cir. Nov. 12, 2024). In *Muldrow*, the Supreme Court held that it is sufficient to allege "some 'disadvantageous' change in an employment term or condition." *Muldrow*, 601 U.S. at 354 (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998)); *see id.* at 355 ("some harm respecting an identifiable term or condition of employment"). Courts in this Circuit have concluded that the

lower standard for an adverse action articulated in "*Muldrow* applies to discrimination claims under the ADEA." *Mitchell v. Planned Parenthood of Greater New York, Inc.*, 745 F. Supp. 3d 68, 91 (S.D.N.Y. 2024); *see Satina v. City of New York*, No. 24-cv-1842 (JGLC), 2025 WL 902893, at *4 (S.D.N.Y. Mar. 25, 2025).

Plaintiff alleges that, after he complained about McChesney and returned to work under Voo, Plaintiff's job "responsibilities" were "usurped" in connection with the Underground Storage Program.  Compl. at 10.  As a result, Plaintiff alleges, he was confined to working on "training and whatever small projects Mr. Voo could find for [him]."  *Id.*  Plaintiff also specifically alleges that he suffered an adverse action when he "was issued an ultimatum to report back to an abusive supervisor or retire."  Compl. at 5; *see* Pl. Opp. at 4.  Plaintiff further alleges that, after he filed an EEOC complaint, his role was in "limbo" for years, which "denied [him] a career path to being promoted."  Sept. Ltr. at 3.

The Court need not decide whether Plaintiff adequately alleges that the EPA took an adverse employment action against him because Plaintiff clearly fails to allege that any adverse action was "because of" his age.  29 U.S.C. § 623(a)(1); *see Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 307 (2d Cir. 2021).  As the Supreme Court and the Second Circuit have stressed, "the ADEA's requirement that an employer took adverse action because of age requires that age was *the* reason that the employer decided to act."  *Id.* (brackets and internal quotation marks omitted) (emphasis added) (quoting *Gross*, 557 U.S. at 176).  The ADEA does not "authorize[] a mixed-motives age discrimination claim."  *Gross*, 557 U.S. at 175.

As Plaintiff makes absolutely clear in his various submission, his transition from working on "the UST Program" to "small projects" for Voo occurred because of alleged misconduct by McChesney, which Plaintiff has "never claimed" was "aged-related."  Compl. at 10; Sept. Ltr. at

3.  With respect to the alleged ultimatum, Plaintiff specifically and repeatedly alleges that the motive was to "kill [his] whistleblower complaint" against McChesney.  Compl. at 13; *see id.* at 12; Sept. Ltr. at 3, 4; Pl. Opp. at 1.  According to Plaintiff, LaPosta "contrived a plan" to "put pressure on [Plaintiff] to retire" specifically so that "she could end [Plaintiff's] complaint against Mr. McChesney without anyone knowing that [McChesney] had been found to have committed Reprimandable Acts."  Compl. at 12; Pl. Opp. at 1.  In other words, Plaintiff alleges, his "age was" *not* "the reason [the EPA] decided to act."  *Lively*, 6 F.4th at 307 (internal quotation marks omitted) (quoting *Gross*, 557 U.S. at 176).  On the contrary, his "age" was simply used "as a weapon" and "a false pretense."  Compl. at 12; Sept. Ltr. at 3.  Thus, even if Plaintiff's age was *a* motivating factor in the EPA allegedly pressuring him to retire (and even assuming, *arguendo*, that the alleged ultimatum was an adverse action), Plaintiff's allegations do not support an inference that he was discriminated against *because of* his age. *See Gross*, 557 U.S. at 175–176.

As noted above, Plaintiff also alleges that, after he filed an EEOC complaint based on the alleged ultimatum, he was in "limbo" for years, which "in turn denied [him] a career path to being promoted."  Sept. Ltr. at 3.  Plaintiff expressly states that he "didn't claim that age discrimination prevented me from being promoted."  *Id.*  In any event, liberally construing the *pro se* Plaintiff's submissions, his allegations about his "limbo status" sound in retaliation, as discussed below.  *See infra* § III.E.  Accordingly, because Plaintiff fails to allege, and, indeed, expressly denies, that "age was but-for' cause" of any alleged adverse action, he fails to state a claim for age discrimination. *Vega*, 801 F.3d at 86 (quoting *Gross*, 557 U.S. at 177).[3]

---

[3] Defendant treats Plaintiff as asserting a distinct "failure to promote claim."  Def. Mem. at 18.  Plaintiff's submissions make clear, however, that he simply is alleging an adverse action in connection with his discrimination and retaliation claims.  *See* Compl. at 5.  In any event, liberally construing his submissions to assert a separate failure to promote claim, Plaintiff fails to state a claim.  To allege "a prima facie case of a discriminatory failure to promote," a plaintiff must allege that: (1) he is a member of a protected class; (2) he "applied and was qualified for a job for which the employer was seeking applicants"; (3) he "was rejected" for that position; and (4) "the position remained open and the employer continued to seek applicants having the plaintiff's qualifications."  *Est. of Hamilton v. City of New York*,

**D.  Plaintiff Fails To State a Hostile Work Environment Claim.**

Plaintiff likewise fails to state a claim for hostile work environment under the ADEA.  "An actionable discrimination claim based on hostile work environment under the ADEA is one for which 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment.'"  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 240 (2d Cir. 2007) (quoting *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999)).  It is "axiomatic" that the alleged "mistreatment" must be "because of" the employee's "protected characteristic."  *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)).  Plaintiff's submissions are devoid of allegations that the EPA was "permeated" with "pervasive" instances of "discriminatory intimidation, ridicule, and insult" based on age.  *Kassner*, 496 F.3d at 240.  Plaintiff alleges that age was raised in one meeting with Voo on July 10, 2015, during which Voo allegedly pressured Plaintiff to retire but did not ridicule or insult him.  *See* Compl. at 11.  In addition, as discussed above, Plaintiff contends that his age was merely a "pretense" for allegedly pressing him to retire.  *Id*. at 12.  Accordingly, Plaintiff fails to state a claim under the ADEA based on an alleged hostile work environment.  *See Kassner*, 496 F.3d at 240; *Rivera*, 743 F.3d at 20.

**E.  Plaintiff States a Claim for Retaliation under the ADEA.**

The ADEA prohibits an employer from retaliating against an employee because of the employee's opposing any practice made unlawful under the statute.  29 U.S.C. § 623(d).  To state a claim for retaliation under the ADEA, a plaintiff must allege (1) participation in a protected

---

627 F.3d 50, 55 (2d Cir. 2010) (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004)).  Plaintiff does not allege that the EPA sought applicants for a particular job, Plaintiff applied, Plaintiff was rejected, and the EPA sought other applicants with Plaintiff's qualifications.  Rather, he alleges that he was "denied a career path to being promoted from GS-12 to GS-13."  *See* Sept. Ltr. at 3.  As discussed below, that allegation supports the inference of an adverse action for purposes of Plaintiff's clearly asserted retaliation claim.  However, an allegation about Plaintiff's general "career path" does not fit the specific elements of a failure to promote claim.  *See Est. of Hamilton*, 627 F.3d at 55.

activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006).  It does not matter if "the underlying conduct complained of was not in fact unlawful," so long as the plaintiff made the complaint in good faith.  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). A plaintiff can recover for retaliation if he is subjected to any action that "could well have dissuaded a reasonable employee in his position from complaining."  *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 44 (2d Cir. 2019) (quoting *Kessler*, 461 F.3d at 209).

Defendant contends that Plaintiff fails to state a claim for retaliation under the ADEA.  Def. Mem. at 15–18.  It stresses that "the majority of the actions Plaintiff describes in his Complaint occurred *before* he engaged in protected activity."  *Id.* at 16 (emphasis in original).  That may be so, but Plaintiff clearly alleges that his "filing the formal EEOC complaint resulted in [his] being in a limbo status for about five years," until "Voo offered [him] a position in another program that he supervises, performing whatever odd projects Mr. Voo could find for [him]," which "in turn denied [him] a career path to being promoted from GS-12 to GS-13." Sept. Ltr. at 3.

Defendant dismisses this allegation as too "generalized" to state a claim.  Def. Mem. at 17. Defendant stresses that Plaintiff himself states that he "never claimed that EPA retaliated against me after I filed the EEOC complaint."  Sept. Ltr. at 3.  However, in spite of that statement, Plaintiff has alleged facts to support an inference that he suffered an adverse action for purposes of a retaliation claim under the ADEA.  Specifically, Plaintiff alleges that his filing of "the EEOC complaint . . . result[ed] in [him] being placed in years of limbo," his "career never recovered," and he is "retiring . . . as a GS-12."  Pl. Opp. at 5.  Such alleged results could dissuade a reasonable

employee from complaining.  *See Davis-Garett*, 921 F.3d at 44.

The Second Circuit has repeatedly emphasized "a district court's obligation to liberally construe *pro se* submissions."  *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 158 (2d Cir. 2017).  In light of Plaintiff's specific factual allegations, and drawing reasonable inferences in his favor, the Court is "required to construe [Plaintiff's] complaint as asserting" a retaliation claim, "even if" he does not apply that legal label.  *Id.*; *see* Sept. Ltr. at 3.  Indeed, it would be error for the Court to be "misled" by Plaintiff's own focus on his alleged mistreatment before he engaged in protect activity and "inability to articulate pellucidly the strongest basis for his claim."  *Soto v. Walker*, 44 F.3d 169, 170 (2d Cir. 1995).

Defendant contends that Plaintiff fails adequately to allege a causal connection between his protected activity (filing the EEOC complaint) and the alleged adverse action ("being placed in years of limbo").  To allege causation for purposes of a retaliation claim under the ADEA, the plaintiff must allege "that the adverse action would not have occurred in the absence of the retaliatory motive."  *Lively*, 6 F.4th at 307 (quoting *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018)).  Plaintiffs ordinarily must rely on "temporal proximity" or "direct evidence of retaliatory animus."  *Id.*  The Second Circuit has "not drawn a bright line to define the outer limits" of temporal proximity.  *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015) (quoting *Gorman–Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001)).  Rather, it is sufficient to allege that the "protected activity was followed closely by discriminatory treatment."  *Id.* at 320.

Here, Plaintiff generally alleges temporal proximity when he alleges that he was "placed in years of limbo" "after" and as a "result[]" of filing an EEOC complaint.  Pl. Opp. at 5; *see* Sept. Ltr. at 3.  While the alleged timeline is vague, *pro se* Plaintiff's allegations "must be held to less

stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008). Moreover, Plaintiff offers some further facts to support causal connection for his retaliation claim. Specifically, Plaintiff alleges that he was supposed to "be permanently placed in another program" after the conclusion of the investigation of his complaint against McChesney. Compl. at 10. Plaintiff suggests, such placement was delayed "for about five years" after he filed his EEOC complaint. Sept. Ltr. at 3. As such, in light of the Second Circuit's strong admonition to liberally construe *pro se* submissions "to raise the strongest arguments that they *suggest*," the Court concludes that Plaintiff plausibly states a retaliation claim. *Triestman*, 470 F.3d at 474 (emphasis in original); *see Kessler*, 461 F.3d at 205.

## F. Defendant's Failure To Exhaust Argument Lacks Merit.

Defendant argues that, even if Plaintiff adequately alleges a retaliation claim, the Court should dismiss the claim on the ground that Plaintiff failed to exhaust his administrative remedies. Def. Mem. at 19–20. Specifically, Defendant argues that "Plaintiff's formal EEOC complaint . . . does not point to any retaliation that allegedly occurred as a result of protected activity." *Id.* at 20. This argument flies in the face of settled precedent.

To be sure, a plaintiff asserting a claim under the ADEA "may bring suit in federal court only if" he has first filed a "complaint with the EEOC and obtained a right-to-sue letter." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001). The Second Circuit has "recognized, however, that 'claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are "reasonably related" to those that were filed with the agency.'" *Id.* (quoting *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 614 (2d Cir. 1999)). Specifically, "[s]uch 'reasonably related' claims include those 'alleging retaliation by an employer against an employee for filing' the underlying claim of discrimination." *Shah*, 168 F.3d at 614.

As such, Defendant's argument that Plaintiff's retaliation claim should be dismissed for failure to exhaust administrative remedies lacks merits.

### IV.    <u>CONCLUSION</u>

For the reasons set forth above, Defendant's motion to dismiss [ECF No. 21] is GRANTED in part and DENIED in part.  Specifically, Defendant's motion to dismiss is granted with respect to Plaintiff's claims under the New York State Human Rights Law and New York City Human Rights Law, his ADEA discrimination claim, and his hostile work environment claim.  The motion is denied with respect to Plaintiff's claim for retaliation under the ADEA.

The Clerk of Court respectfully is requested to terminate the motion at docket entry 21.

**SO ORDERED.**

**Date:   September 25, 2025**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**